Indiana by Justice Rachel Brower and by Senator Maloney. I'm just having a trouble hearing after I got off the plane. I can't hear you. Okay. If I ask you to repeat yourself, it's only because I'm having trouble hearing after I got off the plane. I have an ear problem. Get in there. Yeah. Your Honors, my name is Ben Jemsick. I represent the appellants in this matter, the Carrasco's, against the United Arab Emirates, who I'll refer to as the UAE, for brevity's sake. The two arguments I brought up in my brief, I realize I have 20 minutes, but I don't believe that I'll be that long by any shot. But there's really just two arguments, and the first are... Let me tell you my problems with the case so you can address... We don't confer in advance. I'm sure my colleagues will have other questions. Okay. Here's what's on my mind. You need the non-commercial tort exception, I think, and there are two ways you can get it. One is if he was acting in the course and scope of his employment, but I don't think molesting little girls at home, come around selling candy to your door, is within the scope and course of anyone's employment. And the second is the direct liability for negligence, ordinary negligence, and failure to train of the UAE, but I don't see how we can tell them how to train their pilots without encroaching on their discretionary function. So it looks as though under this Foreign Sovereign Immunities Act, the UAE skates, despite how disgusting the behavior is. How do you get around those two arguments? I really didn't understand from the briefs. Sure. The very first argument, I think, I'll agree with the court. I think that's not within the course and scope, and I believe that that was Judge Carroll's emphasis on his order. I think the real argument is with the training, the idea that it's discretionary, and they bring up the travelers case. The problem is I think once they entertain to train their pilots, it alleviates from the discretionary function. When I train law clerks, it doesn't even occur to me to tell them, don't molest any little girls in Fairbanks during your year here. Why would it occur to the UAE to? Well certainly, Your Honor, the difference is there's a cultural difference, and I think that it takes note that if you read the excerpts of the record with regard to his testimony, every question in his criminal case was that I didn't realize, I wasn't trained, I didn't understand, and in fact, I think it's most important to note that his criminal attorney, in order to get him out of the United States and back into the UAE, they had to argue, if you see here on page 19 of my brief, and I refer to his criminal attorney says, it's not just a mitigating factor here, Judge, it ought to be a controlling factor. It assures this court that he's not a predator. It assures this court that his actions were indeed based on misperception and not on a black heart. I thought the evidence was that you're not allowed to molest 14-year-old girls in the United Arab Emirates either. That apparently is the claim that appellees made in their responsive brief, but I find that disingenuous in the idea that their criminal attorney representing their pilot said the reason he didn't do this on purpose is because he didn't know. They want to argue both ways. That's what the defense lawyer said, or is that evidence? No, the criminal attorney in front of the judge, the criminal attorney representing the pilot, in order to get him from the United States back out to the United Arab Emirates. If I was his lawyer, I would try to get him to sell that too. Understandably. But where's the evidence in the excerpts? Well, the evidence, Your Honor, is the deposition testimony of the pilot himself. Just give me a page. I'll look at it. Okay. Number three, excerpts of record number three. It's page 18 in my brief. I'm looking at the excerpts. Okay. Tell me what page. It's page seven and eight, lines on excerpt of record number three. No, that's not, that's from a memo. Oh, that's... Oh, wait a minute, maybe you're citing to 49 and 50 there? I think so, Your Honor. It's... It says, yeah, 49 and 50. Having read that, don't you agree with me that you and your government have indicated that the reason these criminal acts occurred was because of a difference between your culture and your language and the culture and language of Stephanie Carrasco? Answer, yes, I agree. Do you remember before your sentence that you met with the gentleman, and then it goes on... Counsel, let me ask you this. Yes. This was not the first pilot who was trained, right? I'm presuming you're correct. And there are two, based on the record, there's no information that there has been recurring problems with pilots from the UAE misunderstanding the conduct of American women. Is there anything in the record? Your Honor, well, Your Honor, no, there's nothing in the record. That's why I'm here today. I never got to do any discovery. Judge Carroll wouldn't even allow me to do discovery. I mean, that was the whole point. I wanted to actually depose somebody. I was able to depose one person only because he was being shipped off to the UAE, back to the UAE, basically on the premises that, hey, I didn't mean to do it. They want to use both arguments on this, and they're going to get away with it. I wasn't able to depose one person. That was the entire problem of... My first argument is, this is a motion for summary judgment. You looked at evidence outside the complaint. You looked at the depo I took. You said it was a frivolous case, but you never allowed... And not you, the trial court. It's an issue of law, though, in terms of the immunity of the foreign sovereign. It is. And that part's the issue of law. But the question that you had asked about whether there's other pilots, I don't know. That was just in response to your representation that it was a cultural issue for this particular pilot. It was, Your Honor, but it's not my representation. It's the pilot himself. It's the pilot's attorney. Right. Well, but that was in the context of trying to beat criminal charges, too. Well, the deposition, Your Honor, was taken in context of the civil suit. So, I mean... You got to depose... You got to depose... I was able to depose him, and he answered repeatedly. Repeatedly. Not once, but probably eight or nine times, as you see in the appellate briefing. In his best interest to argue the answer that way. That's the only out he had. No, he had already been... No, the reason I was able to depose him, Your Honor, is because he had already been sentenced and was being shipped off. He had no criminal repercussions at the time I deposed him. He had no... In fact, that was the big argument, because he wanted to plead the Fifth. And I said, You've been sentenced. You can't plead the Fifth. There's no harm here. So he answered these questions... What was his misunderstanding regarding the child? He said, at her age, that he had no idea that he was doing anything wrong, that he wasn't trained, and he didn't know the cultural differences. And that's why nothing was done intentionally on his part. Nobody ever told him. That sounds like just an avoidance of responsibility. Oh, I didn't know there was anything wrong with robbing liquor stores here in this strange country. Oh, I understand that, Your Honor. And I know there's comparative fault, and certainly he bears the brunt of the comparative fault, but the idea is... Comparative fault? Well, if we try this back in the District Court of Arizona, there would be, likely, a judge would say there's some comparative fault, certainly on the guy who intentionally did this. But the idea is... I thought you meant on the part of the child. Oh, no, no. On the part of the actual pilot, who I have no ability to do anything. I can't figure the training that you're talking about. I mean, it's true that in some countries, women smile at you, and it just means they're nice. Other countries, they smile at you. It means they're responsive to you. They like you. And that cultural difference, people that travel see. But as far as grabbing somebody and holding them in your house, and they're 14 years old and doing sexual stuff with them, is there any evidence that there is any cultural difference that training was needed for? Well, again, not to fall back on this, but I was not able to do my... I mean, they never even answered. I wasn't able to do anything. The whole idea of these sovereign immunity things is they don't have to go through the litigation. They get out right at the get-go. I understand that. So you don't get to do all your discovery first. No, I understand that. But when you're asking me factual questions about training and so forth, those are factual questions that I would have to do. But there are people who specialize in different cultures. Professors and anthropologists and all kinds of people. And you can get evidence regarding differences in culture without deposing the people in the country at issue. And I wasn't able to... I mean, this was... They never even answered the complaint. And for reasons that you're saying, it's a question of law. So I never even was able to go into the factual to get an expert to spend money to do all of that. I waited. In fact, if you see the record, I waited to allow them to get time to answer. Oh, I'm sorry. I didn't hear you. I know. I've been trying to get in. It seems to me the problem is that Judge Carroll was correct that he could take a certain amount of evidence to determine the immunity issue. He's allowed to do that. Sure. What you're saying is that if he takes evidence, then automatically the motion to dismiss becomes a summary judgment and that it was premature because you hadn't completed discovery. But it seems to me that the law allows him to take a certain amount of evidence on the immunity issue without getting into that problem. Is it your position that he took too much evidence and then therefore he swung it over to the summary judgment context? Thus, you're requiring... You're allowed to have discovery. Your Honor, that's exactly my position. Okay, then what is that line? Quite obviously, the cases allow him to do some fact-finding. What is it where he went wrong, that he went too far, therefore he can't have a motion to dismiss, has to be summary judgment, therefore you're entitled to discovery before summary judgment? I think the line was drawn by Judge Carroll when he started to go into the idea that I factually didn't have enough. He called the case frivolous because I couldn't factually prove my case. What language in the record specifically are you referring to that you say crossed the line? His order. I have both the transcript and the order. Are you relying on the order or the transcript? I'm relying on both, Your Honor. Okay, give me the language in the order that you say crossed the line into summary judgment territory. And that is... Page 5 of the order. And that's excerpts of record 8. Okay, what's the language in page 5 of the order that you say... Which line? He goes through... Starting on page 5, I mean, I think it's replete. It's a pretty long order, and I can go through it all, but... No, but what language specifically? On page 5, line 20, it starts out, there's nothing in the record that suggests that the UAE was aware of Almaz-Rui's conduct, or that such conduct was more than a one-time occurrence. So you say this took it into summary judgment territory? No, any time he's talking about facts outside the complaint. Because the motion to dismiss should be strictly based, as you well know, on the four corners of the complaint. Not for jurisdiction purposes. No, I understand that, Your Honor, but for purposes of considering a motion to dismiss, even on jurisdictional purposes, when you go outside the four corners of the complaint, it was a 12b-6 motion that he ruled on. Or was it a 12b-1? No, it was a 12b-6. We still have law that says if it's under the Foreign Sovereign Immunities Act, you can go outside the four corners of the complaint. I think that's just general law, not specifically to the Foreign Sovereign Immunities Act, that you can, in some regards, go outside the four corners of the complaint. But I think his entire decision was based on, by using this case as frivolous, it's... Counsel, what's your strongest case to support your argument that under the facts of this case, summary judgment procedures were implicated? Oh, on the order? What's your strongest case authority to support your argument? My case authority on that goes to... It's the single strongest case. Okay. I apologize. I don't have that. I believe it is... Grimmett v. Brown. What is it? It is... 75F3-506. What's the name of it? Grimmett. G-r-i-m-m-e-t-t v. Brown. And was that a FSIA case? Yeah, it's... 75F3-506, 9th Circuit, 1995. Alright. Do you want me to read a quick excerpt from it? No. If there's no more questions, I'll reserve the last remaining minutes. I didn't realize I would go into this. You can never predict. May it please the Court, my name is Arthur Ferguson from DLA Piper, and I represent the United Arab Emirates. Good morning. Is there anything in the record that would show one way or the other whether people are allowed to do what this pilot did while they're in the UAE? Yes, Your Honor. Tab 2, the last page. An excerpt from the deposition of Saeed Ali Salman Ahmad al-Mazroui. Question. In the United Arab Emirates, if a woman... This is the deposition that Appellant's Counsel referred to. What line are you on? Starting with line 3, Your Honor. Yes, Judge. In the United Arab Emirates, if a woman doesn't want you to kiss them, is that the response that the girl then slaps the man? Answer. First of all, the culture in the United Arab Emirates forbids any man to approach a female before they are married. In the meantime, the military forces advised us and told us when you go to the United States, it's forbidden to have any kind of contact with anyone, especially sexual contact. And this is because this is my mistake, and I'm really sorry that it happened because I received training and I received guidelines. Mr. Rake moved to strike that as nonresponsive to the question. Question by Mr. Rake. My question was, in the United Arab Emirates, if a woman wants you to quit kissing her, is the response to slap the man? Answer. I told you, I mean, a person in the United Arab Emirates cannot have any kind of sexual approaches to answer that question, plus I don't have that experience to know it. Could you tell us exactly what to do about the fact that the complaint does not represent this to be the case? Almaz Rui himself concedes that this is true in his deposition. So do we have to look at the deposition and can we look at the deposition? You do not have to look at the deposition, Your Honor. I believe we are under Thornhill. I believe that pursuant to Thornhill, by this Court, 594 FedSecond 730, since the material facts are not in dispute, we need not decide whether the trial court was required to apply summary judgment standards in ruling on Appelli's motion or whether the court could properly have considered this a purely jurisdictional issue and ruled under 12b1. I believe that within the four corners of this complaint that this falls within the discretionary function doctrine. Not in our brief, unfortunately, was the lead... Actually, it's a little better than that. He seems to be admitting here, They did train me. They did. They said, don't fool around with the girls over there in the U.S. Yes, and I think that it is unfortunate that through other parts of the deposition that there was an avoidance by this pilot. What I'm asking is, his complaint says, basically, I didn't know any better. I can't remember the exact words. Yes, it was because I... Yeah, here it is, paragraph 13. I was not aware that the laws of the state of Arizona prohibited sexual contact and I think it also says that he wasn't trained to the contrary at 31 and 32. But then in his deposition it says he was. And what I'm wondering is, do we have to take the complaint for what it says or can we consider the deposition? Your Honor, I believe that under, since the complaint was written with knowledge of the deposition, it would have been appropriate to have included that in it. With respect to this Court, this Court can go in either direction. The complaint was written with knowledge of the deposition. The deposition came first? I believe so, Your Honor. And my learned counsel can advise me, but I believe that the deposition came first. If it did, then there's questions about whether the representations in the complaint are full and complete and should have been supplemented by the other statements in the deposition. But I believe this Court can decide the case on either way. You can take, in the four corners of the complaint, this complaint says they didn't train within for this item. And under Brookhart, and I would like, it is not cited in our brief, but the particular case that collects the Federal Tort Claims Act analog cases for discretionary function is Kelly v. United States. 241 Fed 3rd 755 at 761 it collects the FTCA cases on discretionary function on training. That's the training case, the last, I believe, training case issued by this Court. And the Brookhart case takes care of the argument that merely by the fact of training, then there is incorporated in that what ought to be training. But we're still under the four corners, Your Honor. Even if we ignore the deposition and stay under the four corners, the extent of training with which to provide employees is surely among those decisions involving the exercise of political, social, or economic judgment. So the rationale, the argument in their papers and by appellant's counsel that the mere fact of training obviates the discretionary function exclusion to the tort exception to the non-jurisdiction of the Foreign Sovereigns Immunities Act, I think I got that right, is, as a matter of law, incorrect. Counsel, are you aware of our recent decision in Corey v. Caterpillar? I am not. Okay. That talks about when making jurisdictional rulings and what evidence can be considered. It was a September decision. You didn't come across that? No, I did not, Your Honor. But I believe that we can stay within the four corners of the complaint given appellant's argument in their brief and before this Court without considering material outside of the four corners of the complaint. Because under that case, it appears that we can the district court has discretion to consider whatever evidence it deems material to make in the jurisdictional determination. Then that would certainly help our case and we wouldn't rely on it, Your Honor. I'm sorry that I did not bring it to the Court's attention. Here, the 56-F filing did not identify with any particularity those facts for which discovery would be required in order to defeat the jurisdictional argument. Wait a minute. Hold it. You're losing me along here. You indicate that we can stay in our determination within the four corners of the complaint for the purpose of the 12B motion. Yes, sir. Is that what the district court did? Yes, I believe they did. And thank you, Your Honor. The reference on page 5 was to the respondeat superior argument which is not being appealed. Page 5 of the order, those facts were unnecessary to the only part of the decision being appealed and that's the negligence. The district court can take facts to determine whether or not the immunity lies. Yes, sir. It's your position that the district court did or did not take facts for the immunity issue? For the immunity issue, I believe the question is before the conclusion whether those facts were relied upon or whether they were assumed for purposes of the court's decision. I'm not sure and it's difficult to tell. The court did not deal directly with the discretionary function issue in our briefs. We did say that under the law of the circuit we can rely, I think manufactured homes, we can rely on other grounds in order to justify the court's decision and to support an appeal. This case comes as I see our position as one third of the bench sees our position. The district court can take facts to make a determination on the immunity issue. If the district court goes further than that it gets into the realm of summary judgment and so our usual rule is it becomes summary judgment therefore counsel says wait a minute I get discovery before summary judgment. So the problem is, as I see it, number one, did the court take facts to determine the immunity issue, which it can do and then secondly, if it did take facts were they just facts pertaining to the immunity or has he gone over the line and into summary judgment? And I don't know the answer to that. Maybe you can help me. Let's start off with the first. Did the district court take facts or did he just rule on the immunity issue without any facts? I did not see in its opinion a discussion of a discretionary function issue which is of course key along with the active state doctrine to a resolution of the issue. The district court spoke about negligence. I think, Your Honor, this may go to the questions that you asked with respect to foreseeability. That's where I think the questions you asked on foreseeability, whether it's foreseeable that if you send a 25-year-old here from another country that they're going to break this particular law and that goes to the question of duty. That's what I think the lower court was ruling on. The lower court did not explicitly rule on the discretionary function. Then we unremitted, I think, Your Honor, to the manufactured homes doctrine which would take us to the four corners of the complaint. I think it can be justified in the four corners of the complaint. This court is free to call the ruling, affirm the ruling on any ground that would be available to it. So within the complaint, the main problem is failure to train and then you would take a position that's discretionary and it comes out through the discretionary exception and therefore immunity lies. That would be your argument? Yes, and I would rely, Your Honor, and I'm aware of Your Honor's rulings looking for a particular rule. And I have the case here in one of my groupings of cases. In Kennewick Irrigation District v. United States, the FTCA. Good case. Pardon me? Good case. Of course, Your Honor. And there is no citation to a particular rule nor is there any suggestion that there is one. This is a general duty to train and that's an FTCA case, Your Honor. Although the standards of discretionary function are the same, the application appears to be more rigorous against both discovery, the Raccoon case, which discusses, I believe one of Your Honors said, that you don't get free discovery for whatever you want to find. You have to be particular. And in fact, Raccoon says that under the FSIA, discovery is only to verify allegations of specific facts crucial to an immunity determination. Counsel, let me ask you this. On page 6 of the order, the district court talked about the testimony of Mr. Massarui. So what does that do to your argument? Well, Your Honor, I believe that the district court is arguing negligence. Not arguing. The district court is using that determination for a negligence standard and I believe that the court, as best I can make it, is saying that even assuming these allegations to be true and that the allegations that are set forth except against the law in the UAE are encompassed in the complaint. If you take out against the law in the UAE, then it's within the four corners of the complaint and I believe... Let's talk about the testimony. You can't reasonably argue that he's confining himself to the four corners of the complaint if he talks about the deposition testimony. He is not, Your Honor. Am I disputing this? No. I believe that he is dealing with the question as to whether there is a duty, a negligence duty. I don't understand why we're talking about four corners and I don't understand why you're arguing that even if we're limited to the four corners of the complaint, defense for UAE still prevails. The reason I don't understand it is the judge says right at the beginning of his order on page 2 that a motion to dismiss for lack of jurisdiction deviates from the standard for other motions. It's not like a 12B6 or Rule 56 and he cites Thornhill quoting it for no presumptive truthfulness attaches to the plaintiff's allegations and he says from Thornhill the plaintiff is responsible for bearing the burden of proof to demonstrate that jurisdiction exists. So it looks like we're out of the four corners from the get-go and he's looking at the deposition. What's the matter with that? Nothing, Your Honor. Why are we talking about the four corners? We don't need to. I was doing it under the stricter standard but it is available to him to look at jurisdictional facts and the jurisdictional facts before him I just hate to twist the complaint  There is no need to, Your Honor. The same deposition that plaintiffs rely upon establishes that there was no failure to So if I think and my colleagues turn out to agree that you don't need to take everything in the complaint as true it's plaintiff's burden they can put in affidavits or whatever they want and show that there's jurisdiction despite the Foreign Sovereign Immunities Act or within it. All right. We look at the record. Yes, sir. I agree. And the record demonstrates Is it okay to waylay little girls selling candy door-to-door in the UAE? Is there something in the record that says that's okay so you have to tell them now when you go to the U.S. it's not okay anymore? Is there something to say part of your job in the U.S. is to waylay these little girls and see what you can do? There is an absence of evidence Without any evidence of those two things you don't get in the exception of the Sovereign Immunities Act? That's correct, Your Honor. Is it that simple? Yes. So we just don't need to fool with the four corners? Agreed. All right. Are there no further questions? Nope. It took a long time to get there. It did. Thank you. I just have a couple of quick issues. He testified that it's forbidden in the UAE so it doesn't matter. It's forbidden there. He should know better here. But I think that's actually the reverse is true. Because it's forbidden there he must think he can do whatever he wants in the United States. That's the whole idea of why he needs to be trained. But the testimony also was that he was told not to have any contact with females in the United States. Especially sexual contact. Yeah, that's what he says in the beginning. Then he says, I don't have knowledge. And then later on in his deposition testimony he completely says something different which makes factual questions of his own testimony. But I think the argument that I'm hearing here now is we're dealing with motions to dismiss that we don't need to look at the four corners. I think where you say, and then he goes on to say something completely different you're speaking to this leading question by his lawyer don't you agree? And then he says, yes I agree. Yeah, and also by his own criminal attorney at the sentencing hearing by several pages of testimony where he says that he didn't have the training. We're basing that on his testimony. Appellants haven't made this information up. We're just trained not to grab little girls selling candy pull them into the house and do something sexual with them. There's a recent issue that just occurred with the same sort of situation in the Middle East where that was the argument, I didn't understand the culture. This isn't the first time this argument has ever been made. I haven't understood the culture so we're all free. We're all okay. But he says the culture there is you don't even approach a woman. And I think that's the whole point that's the culture there. And he thinks coming over to the United States that's not the culture that's where he needs to be trained. He thinks it's rigid in the UAE but in the United States it's a free-for-all. That's where he needs to be trained. That's the whole point. Counsel, can I just ask you about the Grimmett case that you said supported your argument that this was converted to a motion for summary judgment. First of all, that case involved a statute of limitations as opposed to jurisdiction. Would you agree? Yeah, I think that was the argument that was made in the response. So that's different then. A statute of limitations is not a jurisdictional argument. Well, the gist of what I was getting out of that particular case is that when the judge starts to consider the four corners of the complaint and starts talking about the negligence as he did on page 6 of his order is when he starts getting out of his ability to make a decision based on a motion to dismiss although the court pointed that out. It's a different context though. That's why I ask you that you have a case that parallels the circumstances where it's a jurisdictional determination and there was consideration of outside documents because this doesn't help you. Well, in light of the court's earlier questioning of the learned colleague regarding that a 12B motion is acceptable and we don't need to look at the facts of the case simply based on the fact that it's discretionary the state doctrine that they wanted to use in the waiver of the tortious exception is all based on cases involving diplomats and national security. This isn't a case involving a diplomat or national security. This is simply when you're shipping your soldiers over here teach them about what they can and can't do because the cultures are so different and we do the same thing with our men when we send them over and the idea that it's discretionary is alleviated the moment you decide to train them. Whether you want to train them or not that's discretionary. The moment you train them is the moment you have to not be negligent in your training. I have no further arguments if there's any other questions. Thank you, Your Honor. Thank you, Your Honor.
judges: Carrasco v. Al Mazrooel